IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT
Norfolk Division



FILED
OCT - 3 2014
CLERK, US DISTRICT COURT
NORFOLK, VA

LAURIE L. WOOD,

    Plaintiff,

v.

    Civil Action No.: 2:14cv469

UNITED STATES OF AMERICA,

    Defendant.

## COMPLAINT

Plaintiff Laurie L. Wood ("Plaintiff"), by counsel, as and for her Complaint against the defendants, the United States of America ("United States"), states as follows:

### Nature of Action

1.    This action seeks monetary damages in connection with the severe personal injuries sustained by Plaintiff on April 20, 2012 when she was a lawful invitee on the premises of IAMS Northwest Annex River Radio Station Military Installation ("Northwest River Station"), which is a military and law enforcement training center located in Chesapeake, Virginia.

### Parties

2.    Plaintiff Laurie L. Wood is a resident of the Commonwealth of Virginia, with an address of 1620 Rodeo Drive, Virginia Beach, Virginia 23464, within the Jurisdiction of this Court.

3.    Pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), and 2671-2680 ("FTCA"), the United States is the proper party defendant in this action because Plaintiff is seeking damages for personal injuries that occurred as a result of the wrongful,

negligent, careless, and reckless acts and/or omissions of the United States Navy, by and through its agents, officers, and/or employees, while acting within the scope of their employment.

4. Upon information and belief, the United States Navy is an agency under the direction and authority of the United States Department of Defense.

## Administrative Claim

5. Pursuant to 28 U.S.C. § 2401(b), Plaintiff duly and timely filed an Administrative Claim using Standard Form 95 with the United States Navy, the appropriate Federal agency to which Plaintiff's Claim was submitted (hereinafter referred to as "Plaintiff's Claim"). A true and correct copy of Plaintiff's Claim, with exhibits attached thereto, is attached hereto as **Exhibit "A."**

6. Plaintiff's Claim was duly served upon the United States Navy at the following address: Department of Navy, Office of the Judge Advocate General, Tort Claims Unit Norfolk, 9620 Maryland Avenue, Suite 100, Norfolk, Virginia 23511.

7. Plaintiff's Claim was received by the Department of the Navy on January 2, 2014.

8. By letter dated January 8, 2014, the United States Navy, by and through Joseph P. Callahan, acknowledged receipt of Plaintiff's Claim. A true and correct copy of the United States Navy's January 8, 2014 acknowledgement letter is attached hereto as **Exhibit "B."**

9. By letter dated April 9, 2014, the United States Navy provided notice that Plaintiff's Claim was denied. A true and correct copy of the United States Navy's April 9, 2014 denial letter is attached hereto as **Exhibit "C."**

### Jurisdiction and Venue

10.     This Court has jurisdiction over the asserted claims pursuant to 28 U.S.C. §§ 1331 and 1346(b).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1402(b), because the Plaintiff resides in this District, and the events or omissions giving rise to this claim occurred in this District.

### Factual Allegations

12.     The Plaintiff is a 37 year-old military veteran who currently resides in Virginia Beach, Virginia.

13.     Plaintiff was an Active Duty member of the United States Navy from on or about February 27, 1995 through June 26, 2000. From June 26, 2000 through November 7, 2001, Plaintiff served in the Naval Reserve Force. However, Plaintiff also served as an Active Duty member for a period of seven (7) months during the year 2001 and in the year 2010, when she was mobilized to the war in Afghanistan.

14.     Plaintiff was employed by the Norfolk Sheriff's Department ("Sheriff's Department") from in or about 2002 through in or about 2013.

15.     Plaintiff held the rank of Corporal with the Sheriff's Department and became a member of its Training Team ("Training Team") in or about 2011.

16.     Members of the Training Team were responsible for training members of the Sheriff's Department's Basic Academy Recruiting Classes (individual members hereinafter referred to collectively as "Recruits") throughout a three (3) month training period, often referred to as the "Academy."

8232340.3

17. During the three (3) month Academy training, the Training Team often took Recruits to various off-site education and training facilities that had simulation equipment, including areas located on the Northwest River Station in Chesapeake, Virginia.

18. The Northwest River Station, including Munro Village, was owned, operated and controlled by the United States Navy, by and through its agents, officers and/or employees.

19. Members of the Training Team submitted a Range Request Form to the United States Navy, seeking an invitation to use Munro Village for training purposes. Attached as **Exhibit "D"** is a copy of the February 8, 2012 Range Request submitted by the Sheriff's Department.

20. The United States Navy, by and through its agents, officers and/or employees, acting within the scope of their employment, approved the Sheriff's Department's Range Request, thereby expressly inviting approximately 30 members of the Sheriff's Department, including Plaintiff, other members of the Training Team, and Recruits to Munro Village for purposes of training. Attached as **Exhibit "E"** is a copy of the February 14, 2012 approval form, which was approved by "GYSGT MURPHY."

21. The training at Munro Village was scheduled by the United States Navy for April 19, 2012 – April 20, 2012.

22. Munro Village included a multi-level gray structure known as "mock boat" which was intended to be used by military and law enforcement personnel for a wide variety of training exercises (hereinafter referred to as the "Subject Building").

23. The United States Navy, by and through its agents, officers and/or employees, acting within the scope of their employment, had previously placed a group of four (4) mats or pads adjacent to the Subject Building (hereinafter referred to as the "Subject Mats").

24. The Subject Mats were placed adjacent to the Subject Building for the purpose of providing trainees with fall and safety protection.

25. The distance between the second floor of the Subject Building and the Subject Mats was approximately 20 feet.

26. The Subject Mats were placed adjacent to the Subject Building by the United States Navy, by and through its agents, officers and/or employees, before Plaintiff and other Sheriff's Department personnel arrived on site for training.

## The Subject Incident

27. On or about April 20, 2012 between approximately 8:00 – 9:00 a.m., the Plaintiff arrived at Munro Village, along with other members of the Training Team.

28. Certain buildings and structures within Munro Village were often used by the Training Team to teach Recruits the practice of safely and tactically "clearing buildings" and "moving through streets."

29. At the aforementioned date and time, members of the Training Team, including Deputy Jason Giovenco-Montano, Deputy Harry Leroy Johnson and Deputy Justin Mark Bonk ("Deputy Bonk") began devising a training scenario for the Recruits.

30. At the aforementioned date and time, and while said members of the Training Team were devising a training scenario for the Recruits, Deputy Bonk attempted a "bail out" by jumping off the Subject Building and onto the Subject Mats.

31. Deputy Bonk landed on the Subject Mats and exited without incident.

32. Moments after Deputy Bonk jumped off the Subject Building and exited the Subject Mats without incident, Plaintiff pushed herself off from a platform of the Subject Building with her feet first and landed in between two of the Subject Mats causing Plaintiff to suffer, *inter alia*, paralysis (burst fracture of thoracic vertebra at T12). A copy of the Norfolk Sheriff's Office Incident Report is attached hereto as **Exhibit "F."**

33. The Subject Mats were not properly secured together, which created a dangerous opening in between the Subject Mats.

34. The Subject Mats should have been secured together through the use of a "top pad" which have eliminated any dangerous opening and the further possibility that a lawful invitee and/or trainee would land on the dangerous opening and make impact with a hard surface.

35. The United States Navy, by and through its agents, officers and/or employees, acting within the scope of their employment, failed to properly secure the "top pad," and thus created a dangerous, defective, and unsafe condition surrounding the Subject Building and on the Subject Mats.

36. The United States Navy, by and through its agents, officers and/or employees, failed to ensure that the Subject Building and Subject Mats were reasonably safe when Plaintiff and other lawful invitees of the Sherriff's Department came on to the premises and began using the Subject Building and Subject Mats for training purposes.

## FIRST CAUSE OF ACTION
### (Negligence)

37. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as through more fully set forth herein.

38. Defendant, the United States of America, owned, maintained or controlled Northwest River Station, including the Subject Building.

39. Defendant, the United States of America, by and through its agents, officers and/or employees, acting within the scope of their employment, owed a duty of ordinary care to Plaintiff to provide a reasonably safe training facility and ensure that the Northwest River Station, including the Subject Building, was free from defects and/or dangerous conditions.

40. Defendant, the United States of America, by and through its agents, officers and/or employees, acting within the scope of their employment, owed a duty of ordinary care to warn the Plaintiff of any unsafe condition which the Defendant knew, or should have known, existed on the property.

41. Defendant's negligent acts and/or omissions, by and through its agents, officers and/or employees, acting within the scope of their employment include one or more of the following negligent acts in that they:

    i. affirmatively created the dangerous and defective condition by failing to properly secure the "top pad" on the Subject Mats, thereby rendering the Subject Building unreasonably dangerous;

    ii. failed to take adequate precautions to ensure that the Subject Building and Subject Mats were free from traps, defects and/or dangerous conditions;

iii. failed to take adequate precautions to ensure that lawful invitees, including Plaintiff, could safely utilize the Subject Building and Subject Mats for training purposes;

iv. failed to inspect the Subject Building and Subject Mats for traps, defects and/or dangerous conditions when it knew or reasonably should have known individuals would be using them for training purposes;

v. failed to use ordinary care to ensure that the Subject Building and Subject Mats were in a reasonably safe condition; failed to inspect the Subject Building and Subject Mats on a systematic and routine basis to ensure that the areas were free from traps, defects and/or dangerous conditions;

vi. failed to take any action to warn lawful invitees, including Plaintiff, of the trap, defect and/or dangerous condition especially after: (a) having actual notice of the dangerous condition prior to Plaintiff's fall; (b) having a sufficient period of time to discover the condition and remedy the defective condition; and (c) having created the defective condition by failing to secure the Subject Mats with a "top pad;

vii. failed to plan, develop, implement, or otherwise place into effect adequate and proper guidelines, systems, rules, regulations, procedures, and/or checklists intended to ensure the safety of lawful invitees; and

viii. failed to hire, employ and train staff members to plan, develop, maintain, deliver and/or execute said systems, rules, regulations, procedures, and/or checklists.

42. As a direct and proximate cause of Defendant's negligent acts and/or omissions, by and through its agents, officers and/or employees, acting within the scope of their employment, Plaintiff has been seriously and permanently injured and disabled; has been rendered sick, sore, lame and disabled; including paralysis with limited muscle activity of the lower extremities; bowel injuries; neurogenic bladder; carpal tunnel syndrome; has been caused to incur medical bills, pain, suffering, loss of enjoyment of life and severe emotional distress both in the past and in the future; past and future lost wages; will continue into the future to have significant disabilities and disfigurements, will be otherwise disabled into the future with attendant medical bills, rehabilitation bills, nursing bills, cost of care bills; will otherwise lose the enjoyment of life; and will be afflicted with pain and suffering now and forever into the future.

43. As a result of the foregoing, Plaintiff hereby seeks Judgment in this matter as against the Defendant in such a fair and reasonable amount as may be awarded by the Court, and such other and further relief as to the Court may seem just and proper.

**WHEREFORE**, Plaintiff hereby demands Judgment in this matter as against the Defendant in such a fair and reasonable amount as may be awarded by the Court, together with such other and further relief as the Court may deem just and proper, attorneys fees, costs and disbursements of this action, all in a fair and reasonable amount not to exceed the aggregate sum of Fifteen Million Dollars ($15,000,000.00), as set forth in Plaintiff's Administrative Claim.

DATED: October 3, 2014

                                               LAURIE L. WOOD

                                               By Counsel

                                               _/s/ Matthew D. Green_  
                                               Matthew D. Green  
                                               Virginia State Bar No. 46913  
                                               Morris & Morris, P.C.  
                                               Post Office Box 30  
                                               Richmond, VA 23218-0030  
                                               Phone (804) 344-8300  
                                               Fax    (804) 344-8539  
                                               mgreen@morrismorris.com

8232340.3